ANDREW GILCHRIST *v.* L. L. PEARSON.

AGENCY.  *As to lands.   Contract of sale of personalty.   Authority.*

> A non-resident banker having an agent in this state to look after his wild land here, with power to negotiate sales thereof, subject to approval, pay taxes, sue for trespass, and otherwise exercise general supervision as to the land, is not bound by a contract made by such agent, in his name, to buy 60,000 staves, and sell them to another. So held, although the contract grew out of a transaction in which the agent had, by replevin, seized 23,000 of the staves as having been cut on the land of his principal, and which the principal had authorized him to sell.

FROM the circuit court of the second district of Panola. county.

HON. EUGENE JOHNSON, Judge.

The record shows that appellant, Andrew Gilchrist, is a non-resident of this state, engaged in banking. He owns a. large body of wild land in this state, and is represented here by one F. C. Nelson, who resides at Jackson, Miss., who is his agent to look after said land, and by his attorneys, Nugent & McWillie, who also reside at Jackson, Miss. In 1890 one Ehrman got out about 60,000 staves, some of which he cut, as a trespasser, on the land of Gilchrist. The appellee, Pearson, having purchased the staves gotten out by Ehrman, entered into a written contract with one Leonard, by which he was to sell and deliver to him all the said staves. Shortly after this contract was made, and before it was executed, Nelson, the agent of Gilchrist, in the name of his principal,.

sued out a writ of replevin, and seized 23,000 of the staves as having been cut on the land of Gilchrist, though the evidence shows that only 9,000 of them were so cut. This interfered with the execution of the contract between Pearson and Leonard. Afterwards there were negotiations between Pearson, on the one hand, and Nelson, as agent of Gilchrist, on the other, looking to a settlement of the matters in controversy. It was claimed by Pearson that Nelson, on behalf of Gilchrist, agreed by way of compromise, to dismiss the replevin suit, and to purchase from him the 60,-000 staves, and carry out the contract for the sale of the same to Leonard. This contract not having been carried out,.the 23,000 staves which Gilchrist had seized in the replevin suit, and for which he had given bond, were sold by him, and afterwards Pearson brought this suit against Gilchrist for failing to carry out the contract with Leonard, alleging that he had been damaged thereby in the sum of $1,950.

The only question which this court passes upon is as to the authority of Nelson, as agent, to make the contract in the name of Gilchrist, which plaintiff sues upon. As to this, the plaintiff, Pearson, testified as follows:

"I regarded Mr. Nelson as the agent of A. Gilchrist in Mississippi, invested with full power to represent him in all things whatsoever growing out of his wild land interests in this state, and over which, to all appearances, Mr. Nelson had full direction and authority. He so represented the fact to me; and from what I knew of Mr. Nelson in similar transactions with regard to lands belonging to the said A. Gilchrist, I did not for a moment question his power as a general agent of Mr. Gilchrist, and conferred with him as such. He never intimated to me that his authority as agent was in any way limited, but impressed me that he had full control and authority in the matter."

F. C. Nelson, witness for defendant, testified substantially as follows:

"I am a land agent, representing a number of non-residents who own land in this state. Am in the employ of defendant, Gilchrist, and, in a limited sense, I am his agent, with general supervision of his lands. My agency extends only to. paying his taxes, preventing depredations, bringing suits in his name against trespassers, and looking out for purchasers of the land. I negotiate sales of the same, subject to his approval, and take and collect notes. He approves all transactions and makes deeds. I employed attorneys to defend this suit and to bring replevin for the staves supposed to have been cut on the lands of defendant. The telegram that instructed the replevin suit was sent by me under the direction of Nugent & McWillie, attorneys. That suit was brought with the knowledge of Mr. Gilchrist. He instructed me to give bond for the staves, and sell them. He sent me to Batesville to dispose of them. I have sold timber and staves for other non-residents, but have sold none for defendant. I never had any authority from him to sell timber or to purchase any thing on his account. I had no authority from him to make a compromise or settlement of the suit with Pearson or anybody else. My authority extended only to selling the staves which Mr. Gilchrist had bonded in the replevin suit. The defendant has never dealt in staves, and has no knowledge of the business; he is a banker. I did not, in my dealings with Pearson, intimate to him that my agency was a limited one. I knew I had no power to bind the defendant by any such contract as Pearson claims I made. If I had thought I had the power, I would not have entered into a contract which Mr. Gilchrist never thought of, and by which he was to be bound to the extent of several thousand dollars. The replevin suit is still pending and undetermined."

This was all the evidence on the question of agency. The defendant did not testify. The court refused to give a peremptory instruction in favor of defendant. Verdict and judgment for plaintiff in the sum of $1,950. Defendant appeals.

*Nugent & McWillie,* for appellant.

Plaintiff testified that he regarded Nelson as agent, with full power to represent defendant in all things growing out of his land interests in this state; that he was such agent to all appearances, and that Nelson never intimated that his authority was limited. Nelson denies plaintiff's testimony in the main, but, accepting it as. true, and the authority of Nelson, as agent, to make a contract was not established. Appearances cannot be relied on to establish an agency. It must be established as a fact, or the party to be bound must hold out to the world the supposed agent as having authority. The effort here is to establish an agency by implication, without evidence of facts necessary to constitute it. See *Hood* v. *Adams,* 128 Mass., 207.

The agency of Nelson was attempted to be shown by his acts and declarations, and these matters were not brought to the knowledge of the supposed principal. *Garvin* v. *Lowry,* 7 Smed. & M., 24; *Kinnare* v *Gregory,* 55 Miss., 612. It was the duty of appellee to ascertain Nelson's authority. *Brown* v. *Johnson,* 12 Smed. & M., 398.

*Mayes & Harris,* for appellee.

The question whether Nelson was empowered to make this contract within the scope of his actual or apparent power was fully and fairly submitted to the jury. The verdict is conclusive, unless the court shall say there was no evidence to support it.

It is true Nelson says that he was defendant's agent in a limited sense, and that his agency extended only to paying taxes, preventing depredations, etc., and that he had no power to bind the defendant by the contract in question. But it appears that he attended to the business with .full power, negotiated sales, took purchase-notes, paid taxes, and had general supervision of defendant's work. He brought suit on uncollected notes, and did assume to act as the agent of Gilchrist to make this settlement. There was no hint of

any want of authority. Then, again, Gilchrist did not testify, and that entitled the jury to indulge in a presumption against him. Looking to all the facts—the nature of the business, and the failure of Gilchrist to testify—it cannot be said that there was no evidence to justify the finding that Nelson had authority.

Again, Gilchrist had so dealt with his interests here in connection with Nelson as apparently his general agent, that the law will hold him bound by his acts.

Looking to the nature of the proven relations, the effort of defendant to escape because of the supposed want of authority in his agent, this seems an afterthought for extrication from a repented bargain. Possibly the jury so regarded it.

CAMPBELL, C. J., delivered the opinion of the court.

Whatever may have been the authority of Nelson to represent Gilchrist as to his lands in Mississippi, there is nothing disclosed to suggest that he was authorized to bind him by a contract to purchase 60,000 staves of Pearson, and sell them to Leonard, and the instruction to the jury to find for the defendant should have been given.

*Reversed, and remanded for a new trial.*